UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 0:15-cv-61238-Cohn/Seltzer

ROBERT MARAZZITA JR.,

    Plaintiff,

v.

BANK OF AMERICA, N.A.,
f/k/a BAC Home Loan Servicing,
L.P.,

    Defendant.
_____/

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

COMES NOW, the Plaintiff, ROBERT MARAZZITA JR. (hereinafter referred to as the "Borrower" or "Plaintiff"), by and through his undersigned counsel, and hereby files the following Memorandum of Law in Opposition to the Motion to Dismiss filed by the Defendant, BANK OF AMERICA, N.A. f/k/a BAC Home Loan Servicing, L.P. (hereinafter referred to as the "Servicer" or "Defendant"), [DE-17], pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure and Rule 7.1, Local Rules, Southern District of Florida and states:

### FACTS

The Plaintiff, ROBERT MARAZZITA (hereinafter referred to as the "Borrower" or "Plaintiff") was previously involved in a foreclosure lawsuit filed by Countrywide Home Loans Servicing L.P. n/k/a BAC Home Loans Servicing, L.P. (hereinafter referred to as the "Servicer"). The action was filed in the Fifteen Judicial Circuit in and for Palm Beach County, Florida under case number 502009CA018330 (hereinafter referred to as the "'330 Case"). The '330 Case resulted in a Final Judgment of Foreclosure against the Borrower on February 5, 2015 (hereinafter

referred to as the "Final Judgment") regarding the property located at 5019 Solar Point Dr., Greenacres, Florida 33009 (hereinafter referred to as the "Subject Property").

The essence of the Amended Complaint [DE-15] that was filed by the Borrower against the Defendant, BANK OF AMERICA, N.A. f/k/a BAC Home Loans Servicing, L.P. (hereinafter also referred to as the "Servicer" or "Defendant") is that the Servicer engaged in the dual-track foreclosure practices that are *now* prohibited by 12 C.F.R. 1024.41 (hereinafter referred to as "Regulation X") to obtain the Final Judgment against the Borrower and the Subject Property. [Emphasis added]. The Borrower has sustained actual damages as a result of a Final Judgment obtained through prohibited dual-track foreclosure practices. Those actual damages will continue into the future unless the Borrower is provided a remedy under Regulation X.

The Borrower and the Servicer jointly scheduled an informal settlement conference (hereinafter referred to as a "Conciliation Conference") in connection with the '330 Case to be held on August 6, 2014.[1] On July 31, 2014, the Servicer, through its legal counsel, sent the Borrower, through his legal counsel, an email containing a list of items that would be necessary for a complete application for loss mitigation for the Conciliation Conference. The Borrower, through his legal counsel, submitted the items requested by the Servicer via email on August 1, 2014.

The Conciliation Conference was held on August 6, 2014, but did not result in a modification of the Mortgage Loan or a settlement. It did result in the submission of a *completed* application for loss mitigation on August 11, 2014, via email, by counsel for the Borrower.[2]

---

[1] The State Court in the '330 Case issued an Order Setting Non-Jury Trial (hereinafter referred to as the "Trial Order") setting the matter for a non-jury trial on August 20, 2014. The Conciliation Conference was a joint effort by the parties to determine if the matter could be settled through a modification of the note and mortgage (hereinafter referred to collectively as the "Mortgage Loan") short of an actual trial.

[2] Although there is no written document to commemorate the transaction, the Servicer, through legal counsel communicated to the Borrower, through his legal counsel, that it did not have a completed application for loss mitigation to conduct a review of the Borrower's loss mitigation options. 12 C.F.R. 1024.41(b)(2)(i)(B) clearly

[Emphasis added].    The Servicer, through is legal counsel, sent the Borrower, through his legal counsel, an email dated August 21, 2014 that consisted of an *untimely* acknowledgment of the receipt of the application for loss mitigation, an *untimely* advisory that the Servicer considered the application for loss mitigation to be complete, and an *untimely* request for additional documents that were not contained in the original list of documents required for a completed application for loss mitigation.³ [Emphasis added].   As a consequence of the Servicer's failure to follow the requirements of Regulation X, the Borrower submitted a *complete* application for loss mitigation as early as August 1, 2014, but no later than August 11, 2014.  [Emphasis added].

The submission of a complete application for loss mitigation by the Borrower is confirmed by the Order of the State Court in the '330 Case on August 20, 2014 continuing the non-jury trial for the specific purpose of allowing that application for loss mitigation to be processed.

---

contemplates that the servicer, upon receipt of an application for loss mitigation, review the submission, acknowledge receipt *in writing*, and advise the borrower if the application is complete or incomplete. [Emphasis added]. Additionally, if the application for loss mitigation is deemed to be incomplete, the servicer is further directed to advise the borrower *in writing* what documents need to be submitted to make the application complete that time frame for submitting those documents. [Emphasis added].  In the case at bar, the Servicer did not comply with the requirements of Regulation X when the borrower submits and application for loss mitigation.

³ The Servicer sent the counsel (at his office address) for the Borrower (and the Borrower directly at the Subject Property address) a letter dated August 12, 2014 containing an "Estimated Property Value" to be used by the Servicer during the loss mitigation process.  Ironically, the Servicer attempted to send the Borrower *only* (at the Subject Property Address) a letter dated August 14, 2014 containing an acknowledgement of the application for loss mitigation that was submitted on August 11, 2014 via email by counsel for the Borrower.  This is one of the letters that the Defendant has attached to its Motion to Dismiss to support its contention that it provided the Borrower a timely acknowledgment letter under Regulation X, along with an advisory that the application was incomplete.  The August 14, 2014 letter is misrepresentative in several ways, underscoring the danger in using such a document in connection with a 12(b)(6) motion to dismiss.  First and foremost, it was neither directly sent or copied to the counsel for the Borrower who submitted the application for loss mitigation.  Secondly, it was sent to the Borrower at the Subject Property address, that was currently vacant, and the Borrower has previously submitted a change of notice address to the Servicer and Lender.  So, in point of fact, the August 14, 2014 letter was *never* received by the Borrower or his legal counsel that submitted the application for loss mitigation. [Emphasis added]. Lastly, the August 14, 2014 letter does *not* advise the Borrower of exactly what documents were needed to make the application for loss mitigation to be complete as required by Regulation X. [Emphasis added].  It only advises the Borrower to refer to a prior letter to determine what is missing.  As set forth in detail above, the Borrower did not receive the letter referred to by the August 14, 2014 letter, but an email list by counsel for the Servicer.  So there is a genuine legal issue of whether one of the exhibits used by the Servicer in connection with a Motion to Dismiss was even compliant with the Regulation X requirements.  This is not an issue for a motion to dismiss.

The problem arises in the case at bar because from that point forward the progress and process of the Borrower's application for loss mitigation is documented through the emails back and forth between legal counsel for the Borrower and legal counsel for the Servicer. The progress and process of the Borrower's application for loss mitigation is *not* documented by the letters attached by the Servicer to their Motion to Dismiss the Amended Complaint. [Emphasis added]. As set forth above, it is the position of the Borrower that neither he nor his legal counsel received the letter dated August 14, 2014. The *first time* the legal counsel saw the letter dated August 14, 2014 was at the hearing on the Borrower's Motion for Continuance on February 2, 2015.[4] [Emphasis added]. It is, for that reason that the Borrower contents the authenticity of the letter dated August 14, 2014, and the content of the email correspondence back and forth between legal counsel for the Borrower and legal counsel for the servicer belie the content of that letter. The Borrower takes the position that the letter dated August 14, 2014 may have been created for the specific purpose of taking the position that the Borrower's application for loss mitigation was incomplete, and the Servicer was not required to follow the requirements of 12 C.F.R. 1024.41(g).

It was for this reason the Borrower has alleged that the Servicer failed to send a letter acknowledging receipt of the loss mitigation application and advising whether the application was complete or incomplete. None of the documents either referred to by the Borrower in this Memorandum of Law or attached to the Servicer's Motion to Dismiss is compliant with the requirements of Regulation X. There are questions whether the August 14, 2014 letter was ever sent or received by the Borrower or legal counsel processing the application for loss mitigation.

---

[4] The State Court issued a Trial Order on or about December 18, 2014 setting a non-jury on the foreclosure action for February 5, 2015. The Borrower filed a Motion for Continuance on January 30, 2015 because, according to the email correspondence between legal counsel for the Borrower and the legal counsel for the Servicer the application for loss mitigation was still in process and under review and evaluation. Pursuant to 12 C.F.R. 1024.41(g), a servicer cannot move a foreclosure action towards judgment if an application for loss mitigation was filed at least 37 days prior thereto, and was still under review.

There are questions regarding the authenticity of the August 14, 2014 against the emails that will be in evidence in this matter. The emails of the legal counsel for the Servicer never transmitted the August 14, 2014 letter or even referenced to it in the substance or body of the emails.

The same dynamic holds true for the other letters attached to the Servicer's Motion to Dismiss (a letter to legal counsel for the Borrower dated December 15, 2014 and a letter to the legal counsel for the Borrower dated January 30, 2015). As such, the Borrower also contests the authenticity and validity of those exhibits.

The legal counsel for the Borrower executed a formal Notice of Change of Address on the record on October 16, 2014 from 4400 West Sample Road, Suite 112, Coconut Creek, Florida 33073 ("Coconut Creek Address") to 1515 S. Federal Highway, Suite 305, Boca Raton, Florida 33432 ("Boca Raton Address"). Counsel for the Servicer, with whom legal counsel was litigating the foreclosure matter and processing the application for loss mitigation was aware of the official address change.[5] The letter to legal counsel for the Borrower dated December 15, 2014 ("December 15, 2014 Letter") and a letter to the legal counsel for the Borrower dated January 30, 2015 ("January 30, 2015 Letter") were both addressed to the legal counsel for the Borrower at the Coconut Creek Address. Those letters were never transmitted to the legal counsel for the Borrower via email by the legal counsel for the Servicer or even referred to in the body or content of those emails. In fact, the emails depict and *ongoing* process for the application for loss mitigation and review/evaluation of the application for loss mitigation. [Emphasis added]. Those emails are completely contradictory to the content and substance of the December 15, 2014 and January 30, 2015 Letters.

---

[5] Not only did the pleadings in the foreclosure action bear a certificate of service of the Boca Raton address after October 16, 2014, but the footer of the emails generated by legal counsel for the Borrower to legal counsel for the Servicer also bear the Boca Raton address.

Again, the first time the legal counsel for the Borrower (or Borrower through his legal counsel) ever saw the December 15, 2014 and January 30, 2015 Letters was on February 2, 2015 at the hearing on the Motion for Continuance of the February 5, 2015.  The Borrower takes the position that the December 15, 2014 and January 30, 2015 Letters may have been created for the specific purpose of taking the position that the Borrower's application for loss mitigation was reviewed and evaluated for all loss mitigation options, and the Servicer was therefore not required to follow the requirements of 12 C.F.R. 1024.41(g).  Or, in other words, the non-jury trial against the Borrower could proceed to judgment.

It was for these reason the Borrower has alleged that the Servicer failed to evaluate the Borrower for all loss mitigation within 30 days after receipt of a complete application for loss mitigation; failed to send the Borrower a notice in writing advising him of all loss mitigation options; and failed to advise the Borrower of his right of appeal of a denial of any and all loss mitigation options.  The emails between legal counsel for the Servicer and legal counsel for the Borrower *will actually* depict the Servicer, through its legal counsel, requesting that same documents over and over and over and over again, and the legal counsel for the Borrower promptly sending the same documents to comply with the request over and over and over and over again.  The emails continued up and through the December 15, 2014 and January 30, 2015 Letters.

The evidence and facts that will eventually come to light is such that upon learning of the August 14, 2014 Letter, the December 15, 2015 Letter and the January 30, 2015 Letter that led directly to a denial of the Motion for Continuance, the Borrower was forced to enter into a Consent Judgment in order to obtain an extended sale date to continue the process of the application for loss mitigation.[6]  The Final Judgment also included a deficiency waiver in an attempt to limit the

---

[6] The alternative was to risk the State Court ordering a judicial sale date following the entry of a final judgment of foreclosure in as little as 35 days pursuant to Florida Statute § 45.031.

Borrower's potential damages. The emails that will come to light in this matter between the legal counsel for the Servicer and the legal counsel for the Borrower will depict that the Borrower (through his legal counsel) attempted to appeal or have the Servicer reconsider the denial of all loss mitigation options set forth in its December 15, 2015 Letter.[7]

It was for these reason the Borrower has alleged that he filed an appeal within the applicable time limit and the appeal has not been officially denied.

The essence of the allegations of the Amended Complaint is that the Borrower, through his legal counsel that was processing the application for loss mitigation, did not receive *any* of the written notices from the Servicer that were required by Regulation X.  In the meantime, the Servicer, through its legal counsel, continue to process a completed application for loss mitigation while it continued move towards a judgment and foreclosure sale date, thereby engaging in prohibited dual-track litigation.  The Servicer argues that it did comply with the regulations of Regulation X by attaching a very limited sample of documents (in which the authenticity is contested herein) that went back and forth between the parties and their respective representatives. The issues are not proper or a Rule 12(b)(6) motion because it requires the Court to move well past the four corners of the pleadings to enter what is essentially a summary judgment.  The Borrower offers the following argument in opposition to the Motion to Dismiss.

## **ARGUMENT**

12 C.F.R. 1024.41(c)(1) requires a servicer to (i) evaluate a borrower for all loss mitigation options that are available and (ii) provide the borrower with a notice in writing of the servicer's determination of loss mitigation options within 30 days of the date of submission. 12 C.F.R. 1024.41(g) prohibits a servicer from moving for a foreclosure judgment or a foreclosure sale if a

---

[7] The appeal or reconsideration was done immediately after the legal counsel for the Borrower learned of the December 15, 2014 letter at the February 2, 2015 hearing.

complete application for loss mitigation is submitted to the service at least 37 days prior to a foreclosure sale.

Thus, the critical determination in this analysis is whether (a) the application for loss mitigation is complete and (b) the date in which the application for loss mitigation is complete.

12 C.F.R. 1024.41(b)(1) defines a complete application for loss mitigation when, "a servicer has received all of the information that the servicer requires from a borrower in evaluating applications for loss mitigation options available to the borrower." 12 C.F.R. 1024.41(b)(2)(i) requires that is a servicer receives an application for loss mitigation 45 days or more prior to a foreclosure sale it is require to: (A) review the application to determine if it is complete and (B) notify the borrower in writing within 5 days whether the application for loss mitigation is complete or incomplete.  12 C.F.R 1024.41(b)(2)(i)(B) further requires that if the servicer deems and application for loss mitigation to be incomplete, it is directed to advise the borrower in writing the additional documents and information to complete the application and the amount of time the borrower has to submit the additional documents.  Under the version of Regulation X that was in effect at the time of the Borrower's submission the failure of the servicer to provide the borrower with the 5 day notice resulted in the application for loss mitigation to be deemed "facially complete."

A facially complete application for loss mitigation would have triggered the 30 day evaluation period required by Regulation X.

The issue of whether the application for loss mitigation submitted by the Borrower was complete, incomplete, or facially complete (so as to trigger the evaluation requirements of the servicer) cannot be resolved in a Motion to Dismiss. The Borrower and Servicer are essentially taking two diametrically opposed positions: the Borrower takes the position that it never received

an acknowledgement letter under Regulation X while the Servicer takes the position that it provided the Borrower with an acknowledgment letter dated August 14, 2014 under Regulation X. The Borrower is relying upon the plethora of emails back and forth between his legal counsel and the Servicer's legal counsel for the Servicer. The Servicer is relying upon an exhibit, the August 14, 2014 Letter, attached to its Motion to Dismiss.

The problem is that the pleading requirements of the Federal Rules of Civil Procedure do not require a plaintiff to attach any exhibits to its complaint. The Borrower did not attach any documents or exhibits to its Amended Complaint. The August 14, 2014 Letter and the emails between the legal counsel for the parties are outside the four corners of the Amended Complaint. The Servicer is correct with its superficial review of the law that a document that is referred to in a Complaint, but not attached as an exhibit to the pleading can be used by the defendant in a 12(b)(6) motion. However, the law of this jurisdiction is that in order to use a document outside the four corners of the complaint in a motion to dismiss (without converting it into a summary judgment) not only must the document be referred to in the complaint, but it must be (a) central to the plaintiff's claim and undisputed. *See*, *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Undisputed means that the authenticity of the document is not challenged. *Id*.

In the case at bar, the Borrower did not refer to any specific document in the Amended Complaint. In fact, the Borrower alleged the absence of relevant documents. The Borrower, in this response to the Motion to Dismiss was specifically disputed the authenticity of the August 14, 2014 Letter (for the reasons set forth above). Therefore, the August 14, 2014 Letter, as a matter of law cannot be used by the Servicer to prosecute a Rule 12(b)(6) Motion. The issues cannot be resolved by a Rule 12(b)(6) Motion, but are correctly the subject of a summary judgment or trial.

Under the version of Regulation X that was in effect at the time of the Borrower's submission of an application for loss mitigation the Servicer was permitted to request additional documents if it incorrectly (and initially) deemed the application to be complete.[8]  12 C.F.R. 1024.41(c)(2)(ii) required the servicer to promptly request the additional documents to make the application complete, but still treat the application as complete for the purposes of the dual-tracking provisions of Regulation X.  At least two separate sections of Regulation X requires the servicer to use "reasonable diligence" in the additional documents and information that it needs for a completed application for loss mitigation.[9]

In the case at bar, and in the absence of the August 14, 2014 Letter, the legal counsel requested additional documents and information by email from the Borrower to evaluate the application for loss mitigation that was submitted by legal counsel from the Borrower.  The emails will demonstrate that the additional documents and information were not a part of the original documents and information that were requested by the Servicer through its legal counsel for a complete application for loss mitigation.  Those emails will also demonstrate that legal counsel for the Servicer made the request for those additional documents and information on multiple occasions, and that without those additional documents and information the application for loss mitigation was incomplete.  Those emails will demonstrate that the Servicer, through its legal counsel, took the position that without the additional documents and information the application for loss mitigation could not be evaluated and reviewed for loss mitigation options.

What the emails will *really* demonstrate is that *each time* the Servicer made the request for the *same* additional documents and information from the Borrower, legal counsel for the Borrower provided the *exact* documents and information requested.  [Emphasis added].   Yet, the Servicer,

---

[8] 12 C.F.R. 1024.41(c)(2)(ii).
[9] 12 C.F.R. 1024.41(b) and 12 C.F.R. 1024.41(c)(2)(ii).

through its legal counsel refused to consider the application for loss mitigation complete, and evaluate/review the Borrower for all available loss mitigation options.

12 C.F.R. 1024.41(c)(2)(i) makes it clear that a servicer cannot seek to evade its duty to evaluate a borrower's application for loss mitigation even if it is incomplete. However, there are two (2) significant differences. If an application for loss mitigation remains incomplete for a significant length of time (without further progress by the borrower to make the application complete) 12 C.F.R. 1024.41(c)(2)(ii) gives the servicer discretion on whether to review an incomplete application for loss mitigation and offer the borrower loss mitigation options. Most significantly, the servicer is not bound by the other requirements of Regulation X in evaluating an incomplete application for loss mitigation. That means the servicer does not have to consider the borrower for all loss mitigation options, and there is no prohibition in seeking a foreclosure judgment or foreclosure sale. As such, a servicer has motivation to deem an application to be incomplete, and churn the file by requesting the same things over and over and over again.

That is *exactly what happened* in the case at bar. The Borrower did not refer to the December 15, 2014 and January 30, 2015 Letters in his Amended Complaint. In fact, the Borrower alleged the *absence* of an evaluation letters for loss mitigation options. The Borrower, in this response to the Motion to Dismiss was specifically disputed the authenticity of the December 15, 2014 and January 30, 2015 Letters (for the reasons set forth above). Therefore, the December 15, 2014 and January 30, 2015 Letters, as a matter of law cannot be used by the Servicer to prosecute a Rule 12(b)(6) Motion. The issues cannot be resolved by a Rule 12(b)(6) Motion, but are correctly the subject of a summary judgment or trial.

What the Borrower is saying through his allegations is that the Servicer did not follow a single requirement, including written notices, of Regulation X regarding the application for loss

mitigation. Meanwhile, the legal counsel for the Servicer followed a completely different path through email correspondence with the Borrower's legal counsel that set up an argument of a "loss mitigation application [that] remains incomplete for a significant period of time without further progress by a borrower to make the loss mitigation application complete." This was done so that the Servicer would not have to follow the requirements of Regulation X, including but not limited to dual-track litigation to obtain a judgment while creating the illusion of a loss mitigation application still under review.

Against this backdrop, the actions of the Servicer in moving forward to obtain a foreclosure judgment and set a foreclosure sale was a direct violation of 12 C.F.R. 1024.41(g). More to the point, the actions of the Servicer of surprising the Borrower by presenting the August 14, 2014, December 15, 2014 and January 30, 2015 Letters to the State Court without previously providing them to the Borrower is the essence of dual-track litigation that Regulation X sought to prevent. The presentation of those letters, while the sum and substance of the emails between the parties tells a completely different story, was done to *intentionally* circumvent the requirements of Regulation X. [Emphasis added]. Now the Borrower has a foreclosure judgment against him, with the very real possibility of losing his home in a foreclosure sale. Even the waiver of a deficiency has consequences. The Federal Government has not renewed the exemptions for forgiveness of a debt, so the deficiency will have to reported as the Borrower's income in the year that it is realized. The Borrower will have to pay Federal Income Taxes on that additional income. The emotional distress and mental anguish from the potential loss of his home to a foreclosure sale, when he submitted a complete loss mitigation application is an actual damage of the Borrower.

The Servicer intentionally twisted the provisions of Regulation X so that it would only have to review/evaluate what it considered an incomplete application at is discretion. The Borrower acted in good faith to save his home through a modification. An improper denial of that loss mitigation option, without notice, forcing the Borrower to accept a consent judgment in order to obtain additional time to complete the modification, only to summarily deny the application is an actual damage of the Borrower. Improperly deeming an application for loss mitigation as incomplete it order deny the Borrower under specific loss mitigation programs is an actual damage to the Borrower.

## CONCLUSION

The Borrower strongly urges the Court to consider the reasons and points set forth above, and deny the Servicer's Motion to Dismiss. Specifically, the Borrower has contested the authenticity of the August 14, 2014, December 15, 2014 and January 30, 2015 Letters. Those letters are the primary basis for the Servicer's Motion to Dismiss, but, as a matter of law, they cannot be used to decide a Rule 12(b)(6) motion. As such, the Motion to Dismiss must fail.

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on August 24, 2015, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF to: Ariel Acevedo, Esq. of Liebler, Gonzalez & Portuondo at: aa@lgplaw.com

             **FISTEL LAW GROUP, P.A.**
             Attorney for Defendant(s)
             1451 W. Cypress Creek Rd.
             Suite 300
             Ft. Lauderdale, FL 33309
             Tel: (954) 522-1212
             Fax: (954) 522-1249
             Service Pleadings: pleadings@fistel.com
             /s/ *F. Scott Fistel*
               F. Scott Fistel, Esq.
               FL Bar No.: 817554